**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

STACY ABRAM JR.                                                                          **PLAINTIFF**


v.                                            **NO. 3:04-CV-00245 GTE**


RICHARD "DICK" BUSBY, et al.                                            **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT TO CITY AND COUNTY DEFENDANTS AND DISMISSING DEFENDANTS ALVIN MILLER, SHERMAN SMITH AND NINA BROWN

Numerous Motions for Summary Judgment are before the Court.

The following motions have been filed by Defendants:

(1)  Motion for Summary Judgment filed by Separate Defendants Sheriff Richard Busby and Chief Deputy Bill Covington (referred to hereinafter as the "Separate Crittenden County Defendants")(Docket No. 49);

(2)  Motion for Summary Judgment filed by Separate Defendants Jerry Eaves, Sherman Smith, Samuel Siddell and Alvin Miller (referred to hereinafter as the "City of Earle Defendants")(Doc. No. 61);

(3)  Motion for Summary Judgment filed by City of West Memphis (Doc. No. 84); and

(4)  Motion for Summary Judgment filed by Separate Defendant Alvin Miller (Doc. No. 117).

Plaintiff has filed six (6) motions for summary judgment (Doc. Nos. 141, 150, 170, 171, 173, and 174), therein seeking judgment against each and every Defendant before the Court, many of them multiple times.[1]  In addition, Plaintiff has filed another motion seeking permission

---

[1]  Defendant Nina Brown is not before the Court.  Further, it does not appear that Plaintiff obtained proper and timely service on Ms. Brown.  If he did, he failed to file a timely proof of service.  Accordingly, Plaintiff's claims against Ms. Brown will be dismissed without prejudice

to amend a prior Motion for Summary Judgment. That motion, Doc. No. 163, will be granted, although it does not appear that the amended motion adds anything to the summary judgment record.[2]

The Court concludes, after a thorough review of the written record in this case, that all of the Defendants before this Court except for Alvin Miller and Sherman Smith are entitled to judgment as a matter of law. The claims against Alvin Miller and any related claims against Sherman Smith are dismissed without prejudice on the Court's own motion, for the reasons stated herein.

**FACTS WITHOUT MATERIAL CONTROVERSY**

On July 12, 2004, Plaintiff Stacy Abram, proceeding *pro se,* filed a Complaint alleging various claims for civil rights violations, including violations of his rights under 42 U.S.C. §§ 1981, 1982, 1983, 1985, and the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff has attempted several times to amend his Complaint.[3] The current version is Plaintiff's Amended Complaint, filed July 8, 2005, Docket No. 78.

Plaintiff's Amended Complaint contains various allegations of wrongdoing against the city and county official Defendants. Those allegations are quoted as follows:

5.    In 2001, Officer Alvin Miller employed by the City of Earle began to harass

---

*sua sponte* for failure to comply with Fed. R. Civ. R 4(m). Alternatively, Plaintiff has failed to state a federal cause of action against Ms. Brown, and the Court would decline to exercise supplemental jurisdiction over any state law claims.

[2] Eventually, the Court had to enter an Order striking Plaintiff's "Third Amended Motion for Summary Judgment" and directing the Plaintiff to cease the filing of such motions. *See* Court's Order of January 4, 2006, Document No. 180.

[3] Plaintiff also attempted to name as Defendants in this action two employees of the Arkansas Department of Human Services, Dianna Jackson and Debra Waits. The Court previously dismissed those two Defendants, finding that the claims asserted against them were either time- barred or failed to state a viable claim for relief under federal constitutional or statutory law. *See* Court's Order of July 8, 2005, Docket No. 77, at p. 6.

Plaintiff and slandering Plaintiff to Defendant Nina B. Brown and stating, "he's not shit and that she needed him, Alvin Miller, he could give her better loving than Plaintiff". In front of Plaintiff, Defendant Alvin Miller opened Defendant Nina B. Brown's blouse, looked at her breasts then he left. The next day Plaintiff made a complaint to the City of Earle and no disciplinary action was taken. (See Exhibit A Attached).[4]

6.    Unknown to Plaintiff at the time, Defendant Alvin Miller, an employee of the city of Earle Police Department, was employing Defendant Nina B. Brown to sell illegal drugs for him on his shift. He supplied her protection to sell and distribute illegal drugs on his shift.

7.    Defendant Nina B. Brown is a lesbian and has a sexual relationship with Dianna Jackson. Because of this relationship with Dianna Jackson, Defendant Nina B. Brown did not pay all the money due and owed to Alvin Miller from the illegal drug sales and distribution.

8.    On or about December 14, 2002, Defendant Alvin Miller entered Plaintiff's residence, handcuffed him and placed him in the back seat of his patrol car. Defendant Alvin Miller then reentered Plaintiff's residence and conducted a private interrogation of Defendant Nina B. Brown out of Plaintiff's hearing. As a result of this action by Defendant Alvin Miller, Plaintiff then filed a lawsuit in United States District Court Eastern District of Arkansas Jonesboro Division. (See Exhibit Attached).[5]

9.    Unknown to Plaintiff, Defendant Nina B. Brown was in the employment of Alvin Miller and the Mayor and other City Officials were aware of these facts. Plaintiff only learned of this relationship with Miller through pretrial discovery.

10.    The City of Earle has undertaken a course of conduct to deny Plaintiff city service that should be afforded to all citizens.

11.    Defendant Nina B. Brown has been involved in a lesbian sexual relationship as well as a heterosexual relationship with members of the Earle Police Department and other city officials.

---

[4]  This exhibit is not attached to the Complaint.

[5]  This exhibit is not attached to the Complaint. Presumably, the case to which Plaintiff refers is *Stacy Abram, Jr., et al. v. City of Earle, et al.*, Case No. 3:03-CV-368 GH. Plaintiff later filed similar allegations in *Stacy Abram, Jr. v. City of Earle, et al.*, Case No. 3:05-CV-164 GH, a case which is presently pending before Judge Howard, but has been stayed until such time as Mr. Abram pays $2,000 in costs. *See* Docket No. 55 in Case No. 3:05-cv-164 GH. The effect of Plaintiff's prior lawsuits is discussed *infra*, in connection with a discussion of his claims against Alvin Miller.

12.     On July 5, 2004 Nina B. Brown appeared at Plaintiff's residence and very belligerent she struck Plaintiff several times, destroyed his personal property, and went inside the residence and called the City of Earle Police and had the Plaintiff arrested.  Officer Jerry Eaves who female companion has a sexual relationship with Nina B. Brown arrested Plaintiff.  Defendant Nina B. Brown had no physical signs of injuries.  An independent witness was present at all relevant times but was not questioned by Officer Eaves.  Plaintiff was handcuffed and incarcerated for two hours and released on his own recognance [sic].

13.     Plaintiff filed a petition for an Order of Protection.  The case DR 2004-563 in the Circuit Court of Crittenden County Arkansas Domestic Relations Division.  The Honorable Victor Hill Circuit Judge granted the Order of Protection and custody of the parties minor children.

14.     Plaintiff was given at least three copies of the Order of Protection, which excluded Nina B. Brown from his place of resident [sic], place of business, the children's school, and other locations.  The Order of Protection was put in the hand of the Sheriff Department on July 8, 2004.  On Friday morning July 9, 2004 Plaintiff called for the West Memphis Police Department to serve the Order of Protection as he had found Defendant Nina B. Brown in the apartment of Dianna Jackson, in the City of West Memphis, Arkansas, Crittenden County with his minor children.

15.     The West Memphis Police Department refused to serve the Order of Protection even though it is directed to any officer, police officer, law enforcement officer in the State of Arkansas and in the United States of America (see attached copy).

16.     On July 9, 2004 Plaintiff observed Defendant Nina B. Brown in Earle, Arkansas, Plaintiff called Bill Covington to give the location of Nina B. Brown, to serve the Order of Protection which also gives Plaintiff custody of the minor children.  Defendant Bill Covington said he was too busy to serve the Order of Protection.  Plaintiff asked Defendant Bill Covington to ask the Earle Police Department to serve the Order of Protection but he also said that he was too busy to call the Earle Police Department so they could serve the Order of Protection.

17.     On or about August 2004 at approximately 2:30 a.m. Defendant Officer Samuel Siddell called Plaintiff on the telephone and requested that he be allowed to pick up parties' minor children that had been in the custody of the Plaintiff for a week.  Officer Siddell further stated to Plaintiff that Nina B. Brown had custody of the parties' minor children and that he was coming to retrieve the minor children from Plaintiff [sic] residence.  Plaintiff stated to Officer Siddell that he had the children all week.  Plaintiff further informed Officer Siddell that he was calling at an inappropriate hour and if he appeared at his residence, he would not be allowed to enter the premises.  Defendant Siddell took this course of action for the Defendant, Nina B. Brown because he had been involved sexually in a threesome.

(Amended Complaint, Docket No. 78, at paragraphs noted).

Plaintiff claims that all of the Defendants violated his due process and equal protection rights.  In addition to 42 U.S.C. § 1983, he cites § 1981 and § 1982 of Title 42. Plaintiff further contends that the Defendants engaged in a conspiracy or tacit understanding to violate his federal and constitutional rights.  For every cause of action stated, Plaintiff contends that each and every allegation of wrongdoing was motivated by his race.  In Plaintiff's own words:

> All of the above was done to Plaintiff because of his race and color, Black. Although most of the Defendants are Black, it is because of the impact and vestiges of slavery and its aftermath of which are prohibited by the statutes and Constitution provision [sic] above.

(Amended Complaint at ¶ 36).

Plaintiff seeks injunctive relief, compensatory damages, punitive damages, costs and attorney's fees.[6]  The Court does not read Plaintiff's Amended Complaint to allege any supplemental state law causes of action.[7]  Rather, Plaintiff relies solely on federal statutory and constitutional authority for the relief claimed.

### SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).  In deciding a motion for summary judgment, the Court must view all facts and inferences from those facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986).

---

[6]  Plaintiff is not represented by counsel and did not request appointed counsel until over a year after he filed this action.  The Court denied Plaintiff's request for appointed counsel.  *See* Docket No. 115.

[7]  Plaintiff's use of the term "outrageous" in one sentence referencing punitive damages - (*see* ¶ 40 of Amended Complaint) -  is insufficient to state a claim for the tort of outrage, although some of the Defendants addressed such a claim, apparently out of an abundance of caution.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. at 323.  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. Rule 56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

## DISCUSSION

I.      **Plaintiff's Claims against the County Defendants (Sheriff Dick Busby & Deputy Covington) and the City of West Memphis**

Plaintiff alleges that his constitutional rights were violated when Deputy Covington and the City of West Memphis refused to serve an Order of Protection.[8]  Plaintiff's Complaint is devoid of any allegations of wrongdoing committed by Defendant Sheriff Busby personally, but Plaintiff apparently contends that Sheriff Busby was responsible for a policy or practice which led to Deputy Covington's failure to serve the Order of Protection.  Likewise, the City of Memphis may only be held legally responsible to the extent that a municipal policy or custom

---

[8]  While these county and city officials are separate Defendants who have filed separate summary judgment motions, the Court considers the claims together due to the similarity of the factual allegations and applicable law.

was the moving force behind a constitutional violation. *Monell v. Department of Social Serv.*, 436 U.S. 658, 694 (1978).   Because the Court finds that there was no underlying constitutional violation, it is unnecessary to inquire further as to the County or City's policy or custom regarding serving Orders of Protection. *See., e.g., Los Angeles v. Heller*, 475 U.S. 796 (1986). Deputy Covington, Sheriff Busby and the City of West Memphis are all entitled to judgment as a matter of law.

Plaintiff's claims regarding the delay in serving the Order of Protection are based on the allegations contained in ¶¶ 13-16 of the Amended Complaint, quoted *supra*.  Separate Defendants Sheriff Busby and Deputy Covington have moved for judgment as a matter of law. They contend that Defendant Covington received the Order of Protection the day after it was issued, that he made an effort to serve it that same day, but was unable to do so.  Defendants further contend that the Order of Protection was served by Officer Houshen the following day. Plaintiff acknowledges that he learned in discovery that Officer Houshen served the Order of Protection on July 10, 2004.  (Pl.'s brief, Docket No. 168, at p. 2).

Defendant City of West Memphis has also moved for judgment as a matter of law.  It contends that it received a telephone call on July 9, 2004, at approximately 6:23 a.m., requesting an officer to stand by at 3986 East Service Road, Apt. 142, in West Memphis, Arkansas, while the individual picked up his children.  In response to the call, Officer Jared Cupples[9] was dispatched to the address, at which time Officer Cupples made contact with the Plaintiff and determined that the children and the mother were not present.  No Order of Protection was presented to Officer Cupples on July 9th.  The following day, July 10th, Officer Cupples assisted Officer Houshen of the Crittenden County Sheriff's Department in locating and serving Nina

---

[9]  Jared Cupples is an African-American female.

Brown with the Order of Protection.  (City's Statement of Material Facts, Attachment 1 to

Docket No. 85).  Plaintiff failed to timely respond to the City's Statement and those facts shall be

deemed admitted.  Plaintiff filed an untimely motion for summary judgment against the City of

West Memphis on December 30, 2005, therewith submitting a statement of material facts.  In

that statement, Plaintiff acknowledges that the West Memphis Police responded to his request for

assistance on July 9th "in a timely manner but they did not honor the order of protection" and

"told Plaintiff that there was nothing that they could do and they simply left."  (Docket No. 176,

at ¶¶ 6-7).

Thus, the material facts are undisputed.   Plaintiff obtained an ex parte Order of

Protection, which was served  two days after it was issued.  Plaintiff would have liked the Order

to have been served sooner, and he contends the these Defendant failed to do all that they could

have done to see that the Order was served sooner.  Plaintiff has not alleged that he suffered any

damages in particular as a result of the one-day delay in service.  He does not contend that he was

harmed or that his children were harmed.  His only possible damages would have been the

inconvenience and delay in being separated from his children for twenty-four hours and in Nina

Brown having custody during this period.

The issue is purely one of law for the Court.  Initially, the Court must determine whether

Plaintiff's federal statutory or constitutional rights were infringed upon by having to wait for the

Order of Protection to be served.  The Court concludes that Plaintiff's allegations of wrongdoing

do not rise to the level of stating a cause of action for any federal constitutional or statutory

violation.

A.    **Plaintiff's due process claim fails as a matter of law**.

Plaintiff's allegations fail to trigger any  Due Process Clause protections as a matter of

law.   The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law."  Amdt. 14, § 1. Congress has created a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Plaintiff must establish a clear violation of a constitutional right in order to prevail on a § 1983 claim.  *McMillian v. Schweiker*, 697 F.2d 213, 215 (1983).

The Court assumes that Plaintiff intends to claim that he had a property interest in the law officials' enforcement of the Order of Protection and that such interest was sufficient to trigger substantive and/or procedural due process protections.[10]  Such a claim fails as a matter of law.

The United States Supreme Court has spoken recently on this issue, on facts far more egregious than those alleged by Plaintiff here.  In *Castle Rock v. Gonzales*, 125 S.Ct. 2796 (2005), the Court rejected the plaintiff's argument that her due process rights were violated when the police department failed to enforce a restraining order after her estranged husband took their three daughters from the plaintiff's backyard.[11]  In rejecting the contention that her due process rights had been violated by the police department's failure to act, the Court first denied the notion that the plaintiff had any substantive due process right requiring the State's protection against invasion by private actors.  *Id.*, at 2803 (*citing DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189 (1989)).  The Court then went on to consider an issue specifically left open in *DeShaney*, whether a claim to entitlement to receive protective services in accordance with the terms of a state statute might trigger procedural due process protection.   As the Court noted:

The procedural component of the Due Process Clause does not protect everything that

---

[10]  Plaintiff's pleading is not entirely clear as to the precise nature of his claims.

[11]  All three girls were later found dead, murdered by their father.

might be described as a benefit: "To have a property interest in a benefit, a person clearly
must have more than an abstract need or desire" and "more than a unilateral expectation
of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of
State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Such
entitlements are " 'of course, ⋯ not created by the Constitution. Rather, they are created
and their dimensions are defined by existing rules or understandings that stem from an
independent source such as state law.' "

*Id.*, (omitting internal citations).

Thus, to determine whether Plaintiff has any potential due process rights in connection

with the Order of Protection, the Court must first turn to the state law governing its entry.

Although Plaintiff's Amended Complaint, Docket No. 78, at paragraph 15, quoted *supra*,

indicates that a copy of the Order of Protection is attached, no such copy is found in the file.  The

Court does, however, find a copy of the Order of Protection elsewhere in the record.   Plaintiff

attached a copy to his statement of facts in support of summary judgment, Docket No. 176.

 Entitled "Ex-parte Temporary Order of Protection," the Order was entered on July 8,

2004, in the Crittenden County Circuit Court.  The Order states in pertinent part:

On this 8th day of July, 2004, the verified Petition seeking an Ex Parte Order of Protection
is presented to the court, and the Court, having examined same, finds sufficient evidence
to establish the existence of domestic abuse and therefore issues the following Order:

IT IS CONSIDERED AND ORDERED BY THE COURT THAT:
. . .
Petitioner is awarded the temporary care and custody of the minor child(ren) of
the parties, and the Respondent is excluded from the school of the minor child(ren).

A law enforcement officer with jurisdiction is ordered to accompany Petitioner
and assist . . . to secure Petitioner's custody of the above named children, and to
otherwise assist in the execution or service of this Order of Protection.
. . .
Respondent is hereby notified that a hearing on the Petition for Order of
Protection will be held on the 21st day of July, 2004 at 9:30 a.m. in the Crittenden County
Courthouse, Marion, Arkansas.

(Order of Protection, Exhibit to Docket No. 176).

Authority for the entry of such an order is granted by  Arkansas' Domestic Abuse Act of

1991.  Ark. Code Ann. § 9-15-101 *et seq*.   The statute provides a circuit judge with broad

authority to award temporary custody of minor children and to do so ex parte, that is, without

notice to the other party.  Ark. Code Ann. § 9-15-205(3).   With regard to law enforcement

assistance to serve such orders, the Act provides:

> When an order is issued under this chapter, upon request of the petitioner the circuit court
> may order a law enforcement officer with jurisdiction to accompany the petitioner and
> assist in placing the petitioner in possession of the dwelling or residence or to otherwise
> assist in execution or service of the order of protection.

Ark. Code Ann. § 9-15-208(a).  Another provision of the Act states that "[a]ny order of

protection granted pursuant to this subchapter shall be enforceable by any law enforcement

agency with proper jurisdiction."  Ark. Code Ann. § 9-15-207.

The Court concludes that the Order Plaintiff obtained did not create a personal

entitlement to the service of the Order in a particular time-frame.  Nor did it create a mandatory

duty on the part of law enforcement officials to serve the Order in a particular time-frame.  The

Court further holds that Plaintiff Stacy Abrams had no entitlement to enforcement of the Order

that rises to the level of a constitutionally protected interest.

Again, the Supreme Court's decision in *Town of Castle Rock* is instructive.  There, the

restraining order in question contained preprinted text entitled "NOTICE TO LAW

ENFORCEMENT OFFICIALS" which commanded said officials in part:

> YOU SHALL USE EVERY REASONABLE MEANS TO ENFORCE THIS
> RESTRAINING ORDER.  YOU SHALL ARREST, OR, IF AN ARREST
> WOULD BE IMPRACTICAL UNDER THE CIRCUMSTANCES, SEEK A
> WARRANT FOR THE ARREST OF THE RESTRAINED PERSON WHEN
> YOU HAVE INFORMATION AMOUNTING TO PROBABLE CAUSE THAT
> THE RESTRAINED PERSON HAS VIOLATED OR ATTEMPTED TO
> VIOLATE ANY PROVISION OF THIS ORDER. . .

*Town of Castle Rock*, 125 S.Ct. at 2801.

The Colorado statute authorizing the order contained similar language regarding the

- 11 -

officer's mandatory duties in connection with the enforcement of such orders.  This language is considerably  more forceful than that contained in the Order obtained by Plaintiff in this case.

Still, the Supreme Court held that the statue failed to created "a true mandate of police action."  *Id.*, at 2806.  In reaching this conclusion, the Court referenced the "deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands" and further noted that "it is simply common sense that *all* police officers must use some discretion in deciding when and where to enforce city ordinances."  *Id*.  (emphasis in original; omitting internal quotation marks and citation).

Similarly, this Court holds that it was within Deputy Covington's lawful discretion not to serve the Order of Protection the day after it was entered, as Plaintiff requested.  It was also within the discretion of Officer Cupples to conclude that the Order could not be served on July 9th and to leave the scene.  Plaintiff's theory of entitlement to services on demand, if recognized, would cripple law enforcement.

Accordingly, Plaintiff's claim that his due process rights were violated fails as a matter of law.

**B.**      **Plaintiff's equal protection claim fails as a matter of law**.

Plaintiff alleges that he was deprived of equal protection under the law because of his race.  The Equal Protection Clause "prohibits government officials from selectively applying the law in a discriminatory way."  *Central Airlines, Inc. v .United States*, 138 F.3d 333, 334-35 (8th Cir. 1998)(citation omitted).  Accordingly, it would be a violation of the Equal Protection Clause for state law enforcement officials to treat blacks and whites unequally with regard to the service or enforcement of Orders of Protection.  To prevail on such a claim, Plaintiff must allege and prove unlawful, purposeful discrimination.  *Batra v. Board of Regents of the University of*

*Nebraska*, 79 F.3d 717, 722 (8th Cir. 1996).  In other words, Plaintiff must demonstrate that the law enforcement officials in question were motivated by an improper racial motive.  *Central Airlines*, 138 F.3d at 335.

Plaintiff's Amended Complaint fails to allege that the City and County officials here would have acted differently with regard to the Order of Protection if he had been white.  To the extent that Plaintiff's Complaint may be liberally construed to so allege, Plaintiff has failed to offer any proof from which the jury could find in his favor on such an allegation.  Plaintiff has provided no evidence that a similarly situated white person received more favorable treatment.  *See, e.g., Ass'n of Residential Resources in Minn., Inc. v. Gomez*, 51 F.3d 137, 140 (8th Cir. 1995)(to state equal protection claim plaintiff must, at a minimum, show similarly situated persons were treated differently).

Plaintiff has included broad allegations of race discrimination in his Amended Complaint, contending that everything that happened to him was the result of his race.  He has failed to come forward, however, with any evidence to permit a jury to find in his favor.  His task is complicated by the fact that the undisputed facts demonstrate that law enforcement officials responded promptly to his requests for assistance, attempted to serve the Order of Protection the day after it was entered and successfully served the Order the next day.  Most reasonable onlookers would describe the police conduct in question as responsive and the outcome as successful.   It is difficult to see how Plaintiff, except in his own mind, was treated unfairly or discriminated against.

The Court concludes that the County Defendants and the City of Memphis are entitled to judgment as a matter of law on Plaintiff's equal protection claim.

C.    **Plaintiff's claims pursuant to 42 U.S.C. §§ 1981, 1982, 1985 & 1986 fail as a matter of law**.

Section 1981 prohibits discrimination in the "performance, modification and termination of contracts" and protects "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981. To prevail on this claim, Plaintiff must prove: (1) that he is a member of a racial minority; (2) that defendant(s) intended to discriminate against plaintiff on the basis of race; and (3) the discrimination against plaintiff concerned an area enumerated by the statute (i.e., to make and enforce contracts, sue and be sued, etc.). *Williams v. Lindenwood Univ.*, 288 F.3d 349, 355 (8th Cir. 2002)(citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2nd Cir. 1993).

Title 42, Section 1982 provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

Although it is not entirely clear which section of § 1985 Plaintiff intends to rely, the Court construes the Complaint as attempting to allege a claim pursuant to § 1985(3). To prevail on this claim, Plaintiff bears the burden of proving: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States. *Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996). Plaintiff cannot prevail on a § 1986 claim unless he also prevails on a § 1985 claim. *Lewellen v. Rath*, 843 F.2d 1103, 1116 (8th Cir. 1988).

Race discrimination is involved in some way in each of these claims. While Plaintiff invokes a general allegation of race discrimination, he has failed to come forward with any

evidence that his race played any role in the short delay in having the Order of Protection served.

The Court concludes that the evidence presented by Plaintiff is insufficient to permit a jury

finding in his favor as to any of these remaining causes of action.

## II.    Claims against Alvin Miller, in both his Individual and Official Capacities

Before the Court considers the merits of any claims against Alvin Miller, it must address

a procedural matter, which the Court brings up on its own initiative.   As the Court pointed out

*supra*, in footnote 5, this is the <u>third</u> federal lawsuit in which Plaintiff has pursued the same or

similar allegations against Alvin Miller.  On January 6, 2006, Judge Howard stayed Plaintiff's

pursuit of similar claims against Alvin Miller until such time as Plaintiff could pay costs in the

amount of $2,000 associated with Plaintiff's prior court filing.  (*See* Judge Howard's Order of

January 6, 2006, Docket No. 55, in Case No. 3:05-CV-164).  Although the case has been

administratively terminated, Plaintiff has the right to reopen the case and to pursue his claims

against Mr. Miller by complying with Judge Howard's Order and paying the costs assessed

against him.  Respect for Judge Howard's Order and considerations of judicial economy lead this

Court to conclude that Plaintiff will not be permitted to pursue his claims against Alvin Miller

(and related claims) before this Court. For the reasons stated below, the Court holds that the

Plaintiff is precluded from pursuing such claims in this action but must instead pursue them in

Case No. 3:05-CV-164, after paying the costs imposed by Judge Howard.

Plaintiff Stacy Abram, Jr., first pursued the same or similar claims against Alvin Miller

beginning on November 21, 2003, when he filed, along with co-plaintiffs Cathy Moore and Nina

Brown, a Complaint alleging various causes of action against Alvin Miller, Sherman Smith, the

City of Earle, and others.   That case was assigned Case No. 3:03-cv-368, initially assigned to

The Honorable Stephen Reasoner, and subsequently reassigned to The Honorable George

Howard, Jr.  Case No. 3:03-cv-368 will hereafter be referred to as CASE # 1.  On July 15, 2004,

Judge Howard granted Plaintiff Stacy Abram's motion for voluntarily dismissal.  At the time

Plaintiff's motion was granted, motions for summary judgment were pending.  Those motions

were subsequently granted and the claims of the remaining plaintiffs, Cathy Moore and Nina

Brown, were dismissed with prejudice.  By voluntarily dismissing his action shortly before the

Court ruled on the pending summary judgment motions, Plaintiff was able to avoid an adverse

decision.

On July 12, 2004, Plaintiff initiated the present action.  While Plaintiff raises claims

against other Defendants in this case that were not raised in CASE #1, he repeats the allegations

against Alvin Miller, although not in the detail such claims were described in CASE #1.

On July 15, 2005, Plaintiff filed a new Complaint against the City of Earle, Sherman

Smith, Alvin Miller, and others.  That case was assigned Case No.  3:05-cv-164 and assigned to

The Honorable George Howard, Jr.  Case No. 3:05-cv-164 will hereafter be referred to as CASE

# 3.  All of the allegations against Mr. Miller in this case are also contained in the Amended

Complaint before Judge Howard in CASE # 3.  In fact, the Amended Complaint in CASE # 3

goes into considerably greater detail regarding the claims against Alvin Miller than the Amended

Complaint in the present case.[12]  Similarly, the allegations against Sherman Smith related to his

alleged failure to train or discipline Alvin Miller are also contained in the Amended Complaint

before Judge Howard in CASE # 3.

On January 6, 2006, Judge Howard imposed a stay of CASE # 3, finding that it was

inappropriate to permit Plaintiff to proceed in that action unless and until he reimbursed the Earle

---

[12] *Compare, e.g.*, the Amended Complaint, ¶¶ 10-45, Docket No. 29 in CASE # 3 with
the Amended Complaint in the present case, Docket No.78.

County Defendants (which include Alvin Miller and Sherman Smith) for costs in the amount of $2,000, representing a deposit for legal services which the Earle County Defendants forfeited when Plaintiff non-suited CASE # 1.  (See Docket No. 55 in CASE # 3).  Although CASE # 3 is presently stayed, the Plaintiff may reopen CASE # 3 by presenting documentation showing that he has paid the $2,000 in costs.

The Court finds that the Plaintiff Stacy Abrams, Jr., is attempting to litigate the same or similar claims in two different forums.  Additionally, if this Court permits the Plaintiff to pursue claims in this forum that have been stayed by Judge Howard, this Court will be permitting the Plaintiff to avoid the intended consequences of Judge Howard's Order.  It appears that Plaintiff is using the tactic of filing multiple lawsuits to obtain several bites at the same apple.  In the process, Plaintiff has unnecessarily and vexatiously multiplied the pleadings and unnecessarily consumed considerable judicial resources.

Accordingly, this Court holds that Plaintiff may not pursue his claims against Alvin Miller in this case.  Plaintiff began his pursuit of legal redress against Alvin Miller in CASE # 1 before Judge Howard and he must continue the pursuit of such claims now before Judge Howard in CASE # 3.   The Court further holds that Plaintiff must pursue any related claims against Mayor Sherman Smith based on an alleged failure to properly train or to supervise Mr. Miller in CASE # 3.  Accordingly, the Court will deny the Motions for Summary Judgment related to Alvin Miller, but will *sua sponte*, dismiss without prejudice Mr. Miller as a party to this action. The Court makes the same ruling with respect to any claims against Mayor Sherman Smith related to his alleged failure to properly train or to supervise Mr. Miller.

### III.     Motion for Summary Judgment by City of Earle Defendants (other than Alvin Miller)

Separate Defendants City of Earle, Sherman Smith, Alvin Miller (in his official capacity

only), Samuel Siddell and Jerry Eaves have moved for summary judgment.  As the Court has already held, Plaintiff may not proceed in this lawsuit on his claims against Alvin Miller or on any failure to train or to supervise claims against Mayor Sherman Smith.  The Court will therefore not address such claims and such motions are denied.

> **(A)     Alleged wrongdoing by Jerry Eaves**

Plaintiff alleges that Officer Eaves violated his constitutional rights when he arrested him on July 5, 2004.  The undisputed facts indicate that on July 5, 2004, Officer Eaves responded to a complaint of Domestic Battery made by Nina Brown at 309 Desha Street, Earle, Arkansas.  Upon arriving at said address, Officer Eaves observed Plaintiff in the front yard.  Officer Eaves arrested Plaintiff on a Domestic Battery Charge.  Plaintiff's arrest occurred within four hours of Ms. Brown's complaint.  Attached to the Defendant's Motion is a copy of the written statement completed by Nina Brown.  The statement reflects that Ms. Brown told the police that the Plaintiff had hit her in the mouth and that she wanted him charged for domestic abuse.  (Exhibit A to Exhibit 3, Officer Eaves' Affidavit, Docket No. 61).

Nina Brown's victim statement provided all the probable cause necessary for Plaintiff's arrest.  *See Morrison v. United States*, 491 F.2d 344 (1974)("There is no constitutional or statutory requirement that before an arrest can be made the officer must conduct a trial").  Furthermore, it "is not material that the person arrested may turn out to be innocent." *Linn v. Garcia*, 531 F.2d 855 (8th Cir. 1976).  Contrary to Plaintiff's suggestion, a warrant was not required.  Nor is there any requirement that an arresting officer must observe physical trauma in order to make such an arrest, as contended by Plaintiff.  In short, even accepting Plaintiff's version of the facts, the Court would not permit this claim to go to the jury because, as a matter of law, Officer Eaves' arrest of the Plaintiff did not violate Plaintiff's constitutional or federal

rights.

**(B)      Alleged wrongdoing by Samuel Siddell**

Plaintiff alleges that Officer Siddell called him at 2:30 a.m. and stated that he intended to

pick up Plaintiff's children pursuant to a domestic relations order.  It appears that this call was

made from the police station at the request of Nina Brown, who wanted custody of her minor

children.  It further appears undisputed that this one call was the only action taken by Officer

Siddell.  Officer Siddell did not go to the Plaintiff's home that night and he did not

call again.  Officer Siddell contends that he did nothing further to assist Ms. Brown with

obtaining custody because she failed to furnish a custody order.

The Court holds as a matter of law that this single phone call by Officer Siddell did not

violate Plaintiff's constitutional or federal rights.  Accordingly, Officer Eaves is entitled to

judgment in his favor as a matter of law.

**(C)      Alleged wrongdoing by Sherman Smith**

Plaintiff's Amended Complaint fails to include any allegations of personal wrongdoing

by Mayor Sherman Smith.  As the Court noted in its January 2005 Order:

> . . . the Court will permit the Plaintiff's case to proceed against the City of Earle
> and its mayor, Sherman Smith, in his official capacity, based on a failure to train
> theory.  The Court will, however, dismiss the individual capacity claim against
> Mr. Smith as Plaintiff's Complaint fails to articulate any action taken personally
> by Mr. Smith.

(Court's Order of January 5, 2005, Docket No. 35, at p. 11).  Accordingly, the Court does not

consider any claim against Mayor Smith in his individual capacity to be pending.  Since the

Plaintiff has failed to show that either Office Eaves or Officer Siddell violated his federal or

constitutional rights, Plaintiff cannot prevail on any claim that Mayor Smith failed to adequately

train or supervise Officers Eaves or Siddell.

**(D)     Municipal Liability**

Plaintiff must prove the following before the City of Earle may face any liability pursuant to 42 U.S.C. § 1983:  (1) an underlying constitutional violation;[13] and (2) that a municipal policy or custom was the "moving force" behind that violation.[14]  Plaintiff's proof falls short on both requirements.  The City of Earle is entitled to judgment as a matter of law.

### CONCLUSION

The following summarizes all the important rulings made herein.

IT IS HEREBY ORDERED, on the Court's own motion, that the claims against Alvin Miller and the claims against Sherman Smith related to an alleged failure to train or to supervise Alvin Miller, are hereby DISMISSED WITHOUT PREJUDICE.  Plaintiff must pursue such claims in Case No. 3:05-cv-164 GH, if at all.

IT IS FURTHER ORDERED THAT the following Motions for Summary Judgment filed by various Defendants (Docket Nos. 49, 61, and 84) be and they are hereby, GRANTED, with the sole exception that any claims against Sherman Smith related to the failure to train or to supervise Alvin Miller are denied, such claims having been dismissed without prejudice. Judgment will be  entered separately.

IT IS FURTHER ORDERED THAT Defendant Alvin Miller's Motion for Summary Judgment (Docket No. 117) be, and it is hereby, DENIED.

IT IS FURTHER ORDERED THAT Plaintiff's Motion for Leave to File Amended Motion for Summary Judgment (Docket No. 163) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED THAT Plaintiff's Motions for Summary Judgment (Docket

---

[13]   *Los Angeles v. Heller*, 475 U.S. 796 (1986).

[14]   *Monell v. Dept. Social Services*, 436 U.S. 658, 694 (1978).

Nos. 141, 150, 170, 171, 173 and 174) be, and they are hereby, DENIED.

IT IS FURTHER ORDERED THAT the City of Earle Defendants' Motion for Protective Order (Docket No. 55) be, and it is hereby, DISMISSED as MOOT.

IF IS FURTHER ORDERED, on the Court's own initiative, that any claims against Nina Brown be, and they are hereby, DISMISSED WITHOUT PREJUDICE.  Plaintiff has failed to file a timely proof of service regarding Ms. Brown and has failed to otherwise demonstrate any intent to pursue a cause of action against Ms. Brown.  Additionally, the allegations contained in Plaintiff's Amended Complaint fail to state a federal cause of action against Ms. Brown and the Court would decline to exercise jurisdiction over any supplemental state law causes of action.

The Clerk of the Court is hereby directed to terminate this case.

IT IS SO ORDERED this   16th   day of February, 2006.

_____/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE